FILED
2022 MAR 4 PM 12:04
CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MARY R., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS** <br><br><br> Case No. 2:20-cv-00525 <br><br> Magistrate Judge Daphne A. Oberg |

Plaintiff Mary R.[1] filed this action asking the court to reverse and remand the Acting Commissioner of the Social Security Administration's ("Commissioner") decision denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–434, 1381–1385. (*See* Compl. ¶ 1, Doc. No. 3.) The Administrative Law Judge ("ALJ") denied her application, finding Ms. R. did not qualify as disabled. (Certified Tr. of Admin. R. ("Tr.") 17–26, Doc. Nos. 20–22.) The court[2] has carefully reviewed the record and the parties' briefs.[3] Because Ms. R. has not demonstrated the ALJ erred in his analysis of the listings, her mental impairments, or her subjective symptom

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including Social Security cases, the court refers to Plaintiff by her first name and last initial only.

[2] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. No. 16.)

[3] Pursuant to Civil Rule 7-1(g) of the Rules of Practice for the United States District Court for the District of Utah, the appeal will be determined on the basis of the written memoranda, as oral argument is unnecessary.

testimony, and any error in relying on the vocational expert's testimony was harmless, the decision is affirmed.

## STANDARD OF REVIEW

Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code provide for judicial review of a final decision of the Commissioner. This court reviews the ALJ's decision and the record as a whole to determine whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards. 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). "[A]n ALJ's factual findings . . . shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153, ___ U.S. ___ (2019) (internal quotation marks omitted). Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla." *Id.* at 1154 (internal quotation marks omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (internal quotation marks omitted). And the court may not substitute its judgment for that of the ALJ. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

## APPLICABLE LAW

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also id.* § 1382c(a)(3)(A). An

individual is considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A); *see also id.* § 1382c(a)(3)(B).

In making this disability determination, the ALJ employs a five-step sequential evaluation, considering whether:

1) The claimant presently engages in substantial gainful activity;

2) The claimant has a severe medically determinable physical or mental impairment;

3) The impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which preclude substantial gainful activity;

4) The claimant possesses a residual functional capacity to perform past relevant work; and

5) The claimant possesses a residual functional capacity to perform other work in the national economy considering his/her/their age, education, and work experience.

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).  The claimant has the burden, in the first four steps, of establishing the disability.  *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).  At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work existing in the national economy.  *Id.*

## PROCEDURAL HISTORY

Ms. R. applied for disability insurance benefits in April 2017, and she applied for supplemental security income benefits in June 2017.  (Tr. 17, 194, 212.)  She alleged disability beginning March 24, 2017.  (*Id.* at 17, 204.)  After an administrative hearing on Ms. R.'s claims,

(*see id.* at 34–56), the ALJ issued a decision finding Ms. R. not disabled and denying benefits, (*id.* at 17–26).

At step two of the sequential evaluation, the ALJ determined Ms. R. had the severe impairments of rheumatoid arthritis, chronic fatigue syndrome, morbid obesity, and carpal tunnel syndrome. (*Id.* at 19.) At step three, the ALJ found Ms. R.'s impairments did not meet or equal the severity of an impairment listing. (*Id.* at 21.) At step four, the ALJ determined Ms. R. had the residual functional capacity ("RFC") to perform light work with additional physical limitations, including a restriction to frequent reaching, handling, and fingering. (*Id.* at 22.) With these limitations, the ALJ found Ms. R. unable to perform any of her past, relevant work. (*Id.* at 24.) However, relying on the testimony of a vocational expert, the ALJ concluded jobs existed in significant numbers in the national economy which Ms. R. could perform. (*Id.* at 24–25.)

The Appeals Council denied Ms. R.'s request for review, making the ALJ's decision the final decision of the Commissioner. (*See id.* at 1–4.)

## DISCUSSION

Ms. R. raises numerous claims of error related to steps two, three, four, and five of the sequential evaluation. She argues the ALJ erred (1) in finding her rheumatoid arthritis did not meet a listing, (2) in his analysis of her mental impairments and treating psychiatrist's opinion, (3) in his analysis of her subjective symptom testimony, and (4) in relying on the vocational expert's testimony. (Opening Br. 11–25, Doc. No. 27.)

### A. Listing 14.09

Ms. R. argues the ALJ erred in finding she did not meet Listing 14.09D, a subsection of the listing for inflammatory arthritis. (Opening Br. 13, 15–16, Doc. No. 27.)

4

The listings at 20 C.F.R. part 404, subpart P, appendix 1, cover medical conditions so debilitating they warrant an automatic presumption of disability without further consideration of the claimant's residual functional capacity or ability to perform past or other work. *See Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). At step three, a claimant has the "burden to present evidence establishing her impairments meet or equal listed impairments." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). To satisfy this burden, a claimant must establish her impairment "meet[s] *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Zebley*, 493 U.S. at 530. "[A] claimant must provide specific medical findings that support each of the various requisite criteria for the impairment." *Lax*, 489 F.3d at 1085; *see also* 20 C.F.R. § 404.1525.

As relevant here, Listing 14.09D includes the following criteria:

Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:

1. Limitation of activities of daily living.

2. Limitation in maintaining social functioning.

3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. pt. 404, subpt. P, app'x I, § 14.09D.

The ALJ found Ms. R.'s rheumatoid arthritis was a severe impairment but did not meet the criteria for Listing 14.09. (Tr. 19, 21.) The ALJ explained Ms. R. was "consistently able to ambulate effectively and use her upper extremities," and noted "the record does not document the requisite constitutional symptoms or signs required in 14.09 B and D or Ankylosing Spondylitis." (*Id.* at 21.)

5

Ms. R. argues the ALJ failed to properly consider Listing 14.09D because he did not discuss her repeated manifestations of inflammatory arthritis. (Opening Br. 16, Doc. No. 27.) She also complains that the ALJ's statement about the lack of constitutional symptoms was "conclusory" and "did not document the requisite constitutional symptoms of 14.09D daily living." (*Id.*) Finally, she argues the ALJ should have considered a letter from her treating psychiatrist, Dr. Gullett. (*Id.* at 17.)

Ms. R. has not demonstrated the ALJ erred in finding she did not meet the criteria for Listing 14.09D. As an initial matter, Ms. R.'s argument erroneously conflates two separate criteria of Listing 14.09D: constitutional symptoms or signs and marked limitation of activities of daily living. *See* 20 C.F.R. pt. 404, subpt. P, app'x I, § 14.09D. The constitutional symptoms and signs set forth in Listing 14.09D are "severe fatigue, fever, malaise, or involuntary weight loss," and at least two must be present to meet the listing. *Id.* Ms. R. fails to identify medical evidence in the record showing at least two of these symptoms and signs were present. She points only to the letter from Dr. Gullett, but this letter addresses just one symptom and sign: fatigue. (Tr. 806.) It does not address fever, malaise, or involuntary weight loss. Therefore, this letter is insufficient to show Ms. R. met the "constitutional symptoms and signs" requirement for Listing 14.09D. And Ms. R. does not identify any other evidence showing she met this requirement.

Because Ms. R. has not identified evidence in the record showing the requisite constitutional symptoms and signs were present, the ALJ did not err in finding she did not meet the criteria for Listing 14.09D.

B. **Mental Impairments and Treating Psychiatrist Opinion**

Ms. R. next challenges the ALJ's treatment of her mental impairments. Although her arguments are difficult to discern, Ms. R. appears to argue the ALJ erred by (1) finding her mental impairments nonsevere at step two, and (2) failing to include limitations related to her mental impairments in her RFC at steps four and five.[4] (Opening Br. 14–15, Doc. No. 27.) Relatedly, she contends the ALJ failed to properly consider the opinion of her treating psychiatrist, Dr. Gullett. (*Id.* at 15.)

1. **Nonseverity Finding**

At step two, the ALJ acknowledged Ms. R. was diagnosed with "an unspecified depressive disorder" by the consultative examiner, Dr. Hardy, and had "received some treatment for depression," citing Dr. Gullett's treatment records. (Tr. 20.) However, the ALJ noted "mental status exams show generally normal findings with the exception of an anxious and depressed mood on occasion," citing records from Dr. Gullett and other providers. (*Id.*) The ALJ also noted "Dr. Hardy described [Ms. R.'s] mental symptoms as mild." (*Id.*) The ALJ found Ms. R.'s "medically determinable mental impairments of Unspecified Depressive Disorder [did] not cause more than minimal limitation in [Ms. R.'s] ability to perform basic mental work activities and [were] therefore nonsevere." (*Id.*) The ALJ also considered the four broad areas of functioning set out in the social security regulations for evaluating mental disorders, known as the "paragraph B" criteria, and found only mild limitations in each area. (*Id.* at 20–21.)

---

[4] Ms. R.'s opening brief also references Listing 12.04, the listing which includes depressive disorders. (Opening Br. 14, 22, Doc. No. 27.) But she does not offer any argument regarding Listing 12.04. Accordingly, the court does not address it. *See Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1031 (10th Cir. 2007) ("Where an appellant lists an issue, but does not support the issue with argument, the issue is waived on appeal.").

7

Ms. R. argues the ALJ erred because he did not "mention Dr. Gullett by name" and did not "weigh the importance of" a 2019 letter from Dr. Gullett in finding her depression nonsevere. (Opening Br. 17–18.) In this letter, Dr. Gullett stated Ms. R. had been his patient since 2014 and had been diagnosed with severe rheumatoid arthritis, chronic fatigue syndrome, "Major Depressive Disorder recurrent type, severe," and fibromyalgia. (Tr. 806.) Dr. Gullett further stated Ms. R. had been unable to work since March 24, 2017 due to these illnesses, specifically due to "chronic pain, chronic fatigue, and depression." (*Id.*) Dr. Gullett expressed his belief that Ms. R. was "disabled and unable to work." (*Id.*)

The ALJ did not err in failing to mention Dr. Gullett or declining to discuss the 2019 letter in his decision. Dr. Gullett's letter does not contain a medical opinion which the ALJ was required to assess in his decision but, instead, addresses issues reserved to the Commissioner. Under social security regulations, "[a] medical opinion is a statement from a medical source about what [the claimant] can still do despite [the claimant's] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions" in specified, work-related abilities. 20 C.F.R. § 404.1513(a)(2). But whether a claimant is disabled or unable to work are issues reserved to the Commissioner. 20 C.F.R. § 404.1520b(c)(3)(i). Statements about these issues are "inherently neither valuable nor persuasive," and the ALJ need not provide any analysis about how such evidence was considered. 20 C.F.R. § 404.1520b(c). Dr. Gullett's letter did not contain opinions about specific limitations or restrictions; instead, it stated Dr. Gullett's belief that Ms. R.'s illnesses rendered her disabled and unable to work. Because these are issues reserved to the Commissioner, the ALJ did not err in declining to address this evidence in his decision.

The record shows the ALJ considered Ms. R.'s depression diagnosis and concluded it was nonsevere based on the medical evidence in the record, including Dr. Gullett's treatment records. (Tr. 20-21.) Ms. R. has failed to demonstrate any error in the ALJ's analysis of her mental impairments at step two.

### 2. RFC Finding

Ms. R. next argues the ALJ erred by failing to incorporate any limitations related to her mental impairments into her RFC. (Opening Br. 14, Doc. No. 27.)

"In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" Social Security Ruling ("SSR") 96-8p, 1996 SSR LEXIS 5, at *14.

The ALJ did not specifically discuss mental impairments in the portion of his decision addressing his RFC findings. However, in his analysis of Ms. R.'s mental impairments at step two, he stated "the following residual functional capacity assessment reflects the degree of limitation I have found in the 'paragraph B' mental function analysis." (Tr. 21.) As set forth above, the ALJ found only mild limitations in each of the four areas of mental functioning. (*Id.* at 20–21.) Overall, the ALJ concluded Ms. R.'s mental impairments caused only a "minimal limitation in [her] ability to perform basic mental work activities." (*Id.* at 20.) Additionally, the ALJ stated his RFC assessment was "supported by the record as a whole" and was "not contradicted by any consistent opinion from a treating physician." (*Id.* at 24.)

On this record, the ALJ did not err in failing to include specific restrictions related to mental impairments in Ms. R.'s RFC. The record demonstrates the ALJ considered Ms. R.'s mental impairments and found they caused only mild or minimal work-related limitations, and he based his RFC assessment on these findings. (*Id.* at 20–21.) Ms. R. again argues the ALJ erred

9

in failing to mention Dr. Gullett or the opinions in his letter. (Opening Br. 15, 21–22, Doc. No. 27.) However, as discussed above, Dr. Gullet's letter did not include any opinion regarding work-related limitations; therefore, the ALJ was not required to discuss it. Ms. R. does not identify any other evidence of limitations related to her mental impairments which would support a different RFC. And she does not identify what additional restrictions should have been included in her RFC. Accordingly, Ms. R. has not demonstrated the ALJ erred in his analysis of her RFC with regard to her mental impairments.

 C. **Subjective Symptom Testimony**

Ms. R. argues the ALJ failed to properly consider her subjective symptoms of fatigue and pain in evaluating her RFC.[5] (Opening Br. 22–25, Doc. No. 27.)

Evaluation of subjective symptom testimony follows a two-step process. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p, 2016 SSR LEXIS 4, at *3; *see also* 20 C.F.R. § 404.1529(b). Second, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." SSR 16-3p, 2016 SSR LEXIS 4, at *4; *see also* 20 C.F.R. § 404.1529(c). In doing so, the ALJ must

---

[5] In the section heading, Ms. R. asserts "substantial evidence did not support ignoring the opinion of treating physician Gregory S. Daynes, MD about the effects of her symptoms of fatigue, pain, and depression on her orthopedic condition." (Opening Br. 22, Doc. No. 27.) But the text that follows contains no argument regarding an opinion by Dr. Daynes, nor does it identify the opinion referenced in the heading. In another section of the brief, Ms. R. refers in passing to a 2018 letter from Dr. Daynes. (*Id.* at 21 (citing Tr. 803).) This letter is nearly identical to the letter from Dr. Gullett, discussed above. (*See* Tr. 803, 806.) Like Dr. Gullett's letter, Dr. Daynes' letter does not contain a medical opinion but, instead, addresses ultimate issues reserved for the Commissioner. Accordingly, the ALJ was not required to discuss it. Because Ms. R. does not identify any other opinion of Dr. Daynes, and she fails to support the issue raised in the heading with argument, this issue is waived. *See Christian Heritage Acad.*, 483 F.3d at 1031.

"examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p, 2016 SSR LEXIS 4, at *10. The ALJ must also consider "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence, including [the claimant's] history, the signs and laboratory findings, and statements by . . . medical sources or other persons." 20 C.F.R. § 404.1529(c)(4).

The record shows the ALJ properly evaluated Ms. R.'s subjective symptom testimony following this two-step process. The ALJ noted Ms. R. alleged "she cannot work due to constant fatigue and pain that limits her ability to sustain any kind of activity," and described her testimony in detail. (Tr. 22.) The ALJ found, "[a]fter careful consideration of the evidence," that Ms. R.'s "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (*Id.*) However, he found Ms. R.'s "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.*) The ALJ explained Ms. R.'s statements were inconsistent with the record "because objective exam findings and the claimant's treatment history show that she should be capable of a limited range of light exertional work." (Tr. 23.) In particular, the ALJ noted Ms. R. alleged pain consistent with her diagnosis of rheumatoid arthritis, but she had been treated with medication with some improvement. (*Id.*) He also relied on records from treating providers showing "grossly normal range of motion in the claimant's joints, but some positive tenderness and mild effusion," and medical exams indicating consistently "normal strength, sensory, gait, and reflex findings." (*Id.*)

11

Finally, the ALJ noted Ms. R.'s consultative exam showed "5/5 strength, normal gait, normal coordination, and normal sensory and reflex findings, as well as full range of motion in both shoulders despite her allegation of shoulder impairment." (*Id.*)  Based on Ms. R.'s "positive tenderness on exams and clear Rheumatoid Arthritis," as well as her testimony and subjective reports of pain, the ALJ limited her to light exertional work with additional restrictions. (*Id.*) Specifically, the ALJ "limited [Ms. R.'s] ability to reach, handle, and finger based on her testimony of significant hand pain, nerve testing, and x-rays that show soft tissue swelling," and found she was unable to ambulate over uneven terrain based on her complaints of ankle pain. (*Id.*)

Ms. R. argues the ALJ "cannot make single, conclusory statements regarding [her] subjective complaints, but must instead provide specific reasons why he rejects her subjective complaints of pain." (Opening Br. 23, Doc. No. 27.)  As the record shows, the ALJ credited many of Ms. R.'s subjective complaints of pain and accounted for them in his RFC findings. And to the extent the ALJ rejected Ms. R.'s testimony regarding the intensity and limiting effects of her symptoms, he provided specific reasons supported by citations to medical records.

Ms. R. also argues "there was never any rationale as to how Dr. Daynes['] treatment records were inconsistent with her hearing testimony of her pain." (*Id.* at 23.)  But Ms. R. does not identify which treatment records from Dr. Daynes supported her testimony or contradicted the ALJ's findings.  And the ALJ did discuss Dr. Daynes' treatment records in his evaluation of the medical opinion evidence, noting the records showed "normal gait, 5/5 strength, negative straight leg raise testing, etc." (Tr. 24.)  The court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's" where the decision is supported by substantial evidence. *Lax*, 489 F.3d at 1084 (internal quotation marks omitted).

The ALJ applied the correct legal standards in evaluating Ms. R.'s subjective symptom testimony, and substantial evidence supports his findings. According, the ALJ did not err in his evaluation of Ms. R.'s subjective symptoms.

### D. Vocational Expert's Testimony

Finally, Ms. R. claims the ALJ erred by failing to resolve an apparent conflict between the vocational expert's testimony and the Dictionary of Occupational Titles (DOT) at step five of the sequential evaluation. (Opening Br. 11–13, Doc. No. 27.)

The vocational expert testified an individual with Ms. R.'s age, education, work experience, and RFC would be capable of performing three occupations:

- Cleaner Housekeeping (135,369 jobs in the national economy);
- Marker (283,214 jobs in the national economy); and
- Ticket Seller (20,760 jobs in the national economy).

(Tr. 25, 53–54.) Based on this testimony, the ALJ found Ms. R. was capable of performing work which existed in significant numbers in the national economy. (Tr. 25.)

As Ms. R. notes, the DOT provides that the occupation of "ticket seller" requires "constant" reaching, handling, and fingering. *See* Dictionary of Occupat'l Titles 211.467-030, 1991 WL 671853. However, the ALJ determined Ms. R.'s RFC included a restriction to only "frequent" reaching, handling, and fingering. (Tr. 22.) Ms. R. argues the ALJ erred by failing to resolve this apparent conflict. (Opening Br. 11–13, Doc. No. 27.)

An ALJ may not rely on evidence from a vocational expert to support a finding of nondisability at step five unless the ALJ asks the expert "how his or her testimony as to the exertional requirement of identified jobs corresponds with the Dictionary of Occupational Titles, and elicit[s] a reasonable explanation for any discrepancy on this point." *Haddock v. Apfel*, 196

13

F.3d 1084, 1087 (10th Cir. 1999). If the vocational expert's testimony "appears to conflict with the DOT," the ALJ must "obtain a reasonable explanation for the apparent conflict." SSR No. 00-4p, 2000 SSR LEXIS 8, at *9. In other words, the ALJ must try to resolve any conflict between the vocational expert and the DOT. *See Haddock*, 196 F.3d at 1091.

Here, the ALJ did not elicit any explanation from the vocational expert regarding the apparent conflict between her testimony and the DOT's requirements for the "ticket seller" occupation. Nevertheless, any error by the ALJ in relying on the vocational expert's testimony regarding the ticket seller occupation was harmless. The Tenth Circuit recognizes an ALJ's erroneous inclusion of one or more jobs is harmless where there remains a significant number of other jobs in the national economy which the claimant can perform. *Evans v. Colvin*, 640 F. App'x 731, 736 (10th Cir. 2016) (unpublished); *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009). Even assuming Ms. R. was not capable of working as a ticket seller, Ms. R. does not challenge the ALJ's finding that she was able to perform the occupations of "cleaner housekeeping" and "marker." (*See* Tr. 25.) Together, these occupations comprise 418,583 jobs in the national economy. (*Id.* at 25, 54.) The Tenth Circuit has found fewer jobs constituted a "significant number" of jobs in the national economy for purposes of a harmless error analysis. *See Shockley v. Colvin*, 564 F. App'x 935, 940–41 (10th Cir. 2014) (unpublished) (finding harmless error where 215,000 jobs existed in the national economy); *Chrismon v. Colvin*, 531 F. App'x 893, 899–900 (10th Cir. 2013) (unpublished) (212,000 jobs); *Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (unpublished) (152,000 jobs). Based on this precedent, the occupations of "cleaner housekeeping" and "marker," which Ms. R. was capable of performing, existed in significant numbers in the national economy. Accordingly, any error by the ALJ in also including the ticket seller occupation was harmless.

## CONCLUSION

For the reasons set forth above, the court AFFIRMS the Commissioner's decision.

DATED this 4th day of March, 2022.

BY THE COURT:

_____
Daphne A. Oberg
United States Magistrate Judge
